UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| OLAYINKO AJAMU BABTUNDE, a/k/a Michael McCoy, a/k/a Olayinko Adama Babatunde, <br><br> Plaintiff, <br><br> -vs- <br><br> ROBERT WARD, SCDC Director; WILLIE EAGLETON, Warden; R. CHAVIS, Associate Warden; LARRY CARTLEDGE, Warden; FLORENCE MAUNEY, Associate Warden; D. FILMORE, Classification; OGUNSILE, Classification; MRS. BUTTREY, Classification; MICHAEL MATTHEWS, Branch Chief of Classification; MICHAEL McCALL; and RICHARD BASSEL, <br><br> Defendants. | Civil Action No.: 4:14-cv-2223-RMG-TER <br><br><br> REPORT AND RECOMMENDATION |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by improperly placing him and keeping him in security detention. Presently before the court is Defendants' Motion for Summary Judgment (Document # 64). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the motion being granted, resulting in dismissal of his claims. Plaintiff timely filed his Response (Document # 72). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This Report and Recommendation is entered for review by the district judge.

## II.   FACTS

Plaintiff alleges that his placement in security detention in 2004 was improper because it was not approved by State Classification. Defendants argue that Plaintiff's cause of action is barred by the statute of limitations.

Plaintiff is currently an inmate at the Perry Correctional Institution (Perry). On October 11, 2004, he was involved in an incident at Evans Correctional Institution (Evans), where he, along with two other inmates, were in possession of homemade knives and took an officer hostage. The Plaintiff and other inmates forced the officer to the gate at knife point and attempted to use him to escape from the institution, but were unsuccessful. As a result of this incident, Plaintiff was convicted of disciplinary offenses of Possession of a Weapon, Attempted Escape, and Assault and Battery of an Employee. According to SCDC policy in October of 2004, an inmate who attempted escape was automatically placed in security detention for a minimum of eighteen months. Matthews Aff. ¶ 8; Eagleton Aff. ¶ 3 (Exs. to Def. Motion). In addition, Plaintiff was convicted of criminal offenses for Assault and Battery with Intent to Kill and Assault and Battery of a High and Aggravated Nature in relation to this incident. Plaintiff received an additional five-year sentence for each of these criminal convictions. Matthews Aff. ¶ 3.[1]

Plaintiff was placed in security detention on October 18, 2004.[2] Matthews Aff. ¶ 6. His placement was recommended by ICC and approved by Associate Warden Chavis. McCall Aff. ¶ 2

---

[1] Plaintiff had previously escaped from the North Carolina Department of Corrections on April 27, 2008, where he was serving a 30-year sentence for cocaine trafficking. It appears from his records that Plaintiff was a fugitive from justice when he was arrested on the charges for which he is currently incarcerated in South Carolina. Matthews Aff. ¶ 4.

[2] It appears this information was not entered into the computer until November 8, 2004. Matthews Aff. ¶ 6.

(Ex. to Def. Motion); Eagleton Aff. ¶ 3. Michael Matthews, the Branch Chief of Institutional Classification, avers that in early 2004, SCDC policy was changed such that State Classification was no longer required to approve an inmate's initial placement in security detention. Rather, the Institutional Classification Committee (ICC) would make a recommendation concerning placement in security detention to the Warden or the Warden's designee, who would make the final decision. Matthews avers that the SCDC Form 19-30, which documented Plaintiff's placement in security detention, had not yet been revised at the time Plaintiff was initially placed in security detention and still indicated that placement in security detention required State Classification approval. Matthews Aff. ¶ 6. Indeed, the SCDC Form 19-30 that was used to document Plaintiff's placement into security detention on October 28, 2004, indicates that it was last revised in March of 1999. SCDC Form 19-30 (Ex. A to Complaint). However, Plaintiff attaches to his response a copy of the SCDC Form 19-30 that was revised in November of 2005. SCDC Form 19-30 (Ex. 2 to Pl. Resp.). Both of these forms include the note that "INITIAL Placement in Security Detention Requires State Classification Approval." Id. Plaintiff also attaches to his response another SCDC Form 19-30, which indicates that it was revised in December of 2013. SCDC Form 19-30 (Ex. 16 to Pl. Resp.). This form includes no requirement for State Classification approval. Rather, it states that the signature of the Warden or Duty Warden is required "only for placement and release from SD." Id.

Inmates can be placed in security detention for several reasons, including if they present a threat to the safety and security of the institution. Once an inmate is placed in security detention, he is initially evaluated every seven days for the first thirty days, and thereafter he evaluated every thirty days. For each evaluation, the ICC will meet to determine if the inmate should remain in security detention. SCDC policy does not require inmates to attend the thirty-day ICC meetings. Matthews Aff. ¶ 9. In making their determination, the ICC will consider all available information concerning

the inmate to make a determination whether he is a threat to the safety and security of the institution. As discussed above, Plaintiff took a staff member hostage at knife point while attempting to escape, had previously escaped from the North Carolina Department of Corrections, and was a fugitive from justice when he was arrested for the charges for which he is currently incarcerated in South Carolina. Members of the ICC will look at these factors along with other factors, including the demeanor or attitude of the inmate, in determining whether to maintain the inmate in Security Detention. Matthews Aff. ¶ 10. Several Classification Caseworkers aver that Plaintiff showed no remorse in relation to his attempted escape, and maintained that "I was merely trying to emancipate myself." Buttery Aff. ¶ 7; Filmore Aff. ¶ 6; Mauney Aff. ¶ 6 (Exs. to Def. Motion).

On February 4, 2013, Plaintiff sent a request to staff to Matthews requesting documentation showing that State Classification had approved his initial placement in security detention. Matthews informed Plaintiff that, at the time of his placement, State Classification was no longer required to approve placement in security detention and that the Warden or Warden's designee approved the recommendation from ICC that he be placed in security detention. Matthews Aff. ¶ 5 and Response to Inmate Correspondence.

On February 10, 2015, the ICC met and based on the totality of the circumstances recommended that Plaintiff be approved for release from Security Detention to the general population. As Plaintiff was not present at this hearing, he was provided with a 48 hour notice so that he could attend a subsequent hearing on the matter. The hearing was held on February 20, 2015, at which time the ICC formally advised Plaintiff that they had voted to remove him from Security Detention. Associate Warden Mauney approved the release as the Warden's designee, but Plaintiff stated at the hearing that he did not want to return to the general population. Once all documentation is completed and bed space is available, Plaintiff will be instructed to return to the general population

and if he refuses, Plaintiff can be charged with a disciplinary offense for refusing to obey a direct order.  Buttrey Aff. ¶ 8.

### III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. at 322.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### IV. DISCUSSION

Defendants argue that all of Plaintiff's claims are barred by the applicable statute of limitations. Section 1983 does not contain an express statute of limitations. Therefore, in determining the proper statute of limitations in a § 1983 claim, the United States Supreme Court has found that the federal court should adopt the forum state's statute of limitations for personal injury claims. Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004); Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir.1991) (stating that since "there is no federal statute of limitations applicable to suits under § 1983, it is the rule that the applicable [statute of limitations] must be borrowed from the analogous state statute of limitations") (internal citations omitted). Under South Carolina law, the statute of limitations for a personal injury claim is three years. See S.C.Code Ann. § 15–3–530(5). Thus, "[t]he statute of limitations for section 1983 causes of action arising in South Carolina is three years." Hamilton v. Middleton, No. 4:02–1952–23, 2003 WL 23851098, at *4 (D.S.C. June 20, 2003); see Hoffman v. Tuten, 446 F.Supp.2d 455, 459 (D.S.C.2006).

Even though the limitations period is borrowed from state law, however, the calculation of when the cause of action accrued is a matter of federal law. National Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1162 (4th Cir.1991). Under federal law, the cause of action accrues "when the

plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir.1995) (citing United States v. Kubrick, 444 U.S. 111, 122–24, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979)).

Plaintiff was initially placed in security detention in 2004. Thus, Defendants argue, this action, which Plaintiff filed on June 10, 2014, is barred by the statute of limitations. Plaintiff argues that he did not learn that his placement in security detention was allegedly unauthorized until "the latter part of 2012," and, thus, the statute of limitations did not begin to run until then. Pl. Resp. p. 14. However, Plaintiff fails to show why he did not make this discovery until 2012.[3] Although it appears that he first inquired about whether his security detention was approved by State Classification in 2012, it is undisputed that Plaintiff knew in 2004 that he was placed in security detention, and that the SCDC Form 19-30 used to notify Plaintiff of his placement in security detention indicated that such initial placement required State Classification approval. Thus, at the time he was first placed in security detention in 2004, Plaintiff possessed sufficient facts about the alleged harm that a reasonable inquiry would have revealed his cause of action. Once a party is placed on inquiry notice, the limitations period is triggered so long as a reasonable person in the plaintiff's position would have learned of the injury in the exercise of due diligence. TRW Inc. v. Andrews, 534 U.S. 19, 30, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)(citing Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir.1992)) ("The duty of inquiry having arisen, plaintiff is charged with whatever knowledge an inquiry would have revealed."). Because Plaintiff possessed sufficient information in 2004 to inquire as to the propriety of his security detention, his present claim, arguing

---

[3] In his response, separate from his statute of limitations argument, Plaintiff does mention that he would not have had any knowledge "of this clandestine ICC unlawful practice had not a concerned prison office [sic] brought it to my, Plaintiff, attention." Pl. Resp. p. 11. However, he does not state when this was brought to his attention.

that this initial placement violated his constitutional rights, is untimely.

Plaintiff also argues that, even if his claim arising out of his initial placement in security detention is barred by the statute of limitations, each thirty-day review, in which the ICC decided to keep Plaintiff in security detention, was a separate and distinct constitutional violation. "To establish a continuing violation the plaintiff must establish that the unconstitutional or illegal act was a ... fixed and continuing practice." National Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir.1991) (internal citations omitted). "[I]f the plaintiff can show that the illegal act did not occur just once, but rather 'in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.'" A Society Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (quoting Nat'l Adver. Co., 947 F.2d at 1167). Continuing unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter does not constitute a continuing violation. Id.  Here, Plaintiff argues that each periodic review amounted to the same violation he alleges occurred in 2004 when he was first placed in security detention.  However, unlike initial placement in security detention, there is no indication in the record that decisions made by the ICC during periodic reviews were subject to State Classification approval either before or after 2004.  The SCDC Form 19-30 (with revision dates of 1999 and 2005) includes three options with respect to security detention: (1) release and return to the general population, (2) initially place in security detention, or (3) "Advanced/reduced/remain in security detention level assignment." SCDC Form 19-30 (Rev. March 1999) and SCDC Form 19-30 (Rev. November 2005) (Exs. 1 and 2 to Pl. Resp.).  Only the option for initial placement in security detention includes the additional requirement of State Classification approval.  Thus, while the decisions to leave Plaintiff in the same security detention level assignment after each periodic review may amount to continuing ill effects of the alleged unlawful decision to first place Plaintiff in

security detention, they are not continuing unlawful acts and, thus, the continuing violation doctrine is not applicable here.

For the reasons discussed above, Plaintiff's claim that his 2004 placement into security detention violated his constitutional rights falls outside the applicable three-year statute of limitations and is, therefore, barred.

## V.     CONCLUSION

Because Plaintiff failed to file this action within the applicable statute of limitations, it is recommended that Defendants' Motion for Summary Judgment (Document # 64) be granted and this case dismissed in its entirety.[4]

> s/Thomas E. Rogers, III
> Thomas E. Rogers, III
> United States Magistrate Judge

January 6, 2016
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[4] It the district judge accepts this recommendation, all other pending motions will be moot.