IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Olayinko Ajamu Babatunde, ) | Civil Action No. 4:14-2223-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Robert Ward, *SCDC Director*; Willie ) | |
| Eagleton, *Warden*; R. Chavis, *Associate* ) | |
| *Warden*; Larry Cartledge, *Warden*; ) | |
| Florence Mauney, Associate Warden; ) | |
| Danielle Filmore, *Classification*; Felicia ) | |
| Ogunsile, *Classification*; Laura Buttrey, ) | |
| *Classification*; Michael Mathews, *Branch* ) | |
| *Chief of Classification*; Michael McCall; ) | |
| *and* Richard Bassel; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on the Report and Recommendation of the Magistrate Judge recommending that the Court grant Defendants' motion for summary judgment because Plaintiff's claims under 42 U.S.C. § 1983 are time-barred. For the reasons given below, the Court rejects the Report and Recommendation, grants Plaintiff's motion to amend the complaint, grants Defendants' motion for summary judgment in part and denies it in part, and recommits this matter to the Magistrate Judge for further proceedings consistent with this Order.

I. **Background**

Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional due process rights by improperly placing him in security detention. Specifically, Plaintiff alleges that his initial placement in security detention in 2004 was improper because it was not approved by State Classification. Plaintiff's proposed amended

-1-

complaint also alleges an Eighth Amendment violation due to denial of exercise opportunities while in security detention.

Plaintiff is currently an inmate at the Perry Correctional Institution. On April 27, 1998, Plaintiff, then serving a thirty-year sentence for cocaine trafficking, escaped from the custody of the North Carolina Department of Corrections. (Defs' Mot. for Summ. J. Ex. 3 ("Matthews Aff.") ¶ 4, Mar. 10, 2015, Dkt. No. 64-3.) He was a fugitive from justice when he was apprehended in South Carolina for kidnapping, burglary, and armed robbery. On October 11, 2004, while an inmate at Evans Correctional Institution, he and two other inmates took an officer hostage at knifepoint in an escape attempt. According to South Carolina Department of Corrections ("SCDC") policy in effect in October 2004, an inmate who attempted escape was automatically placed in security detention for a minimum of eighteen months. (*Id.* ¶ 8.) Plaintiff was placed in security detention on October 18, 2004, on the recommendation of the Institutional Classification Committee ("ICC") with the approval of a designee of the warden. (*Id.* ¶¶ 6–7.)

Formerly, SCDC required State Classification approval for an inmate's initial placement in security detention. In early 2004, SCDC policy was changed to remove the requirement of State Classification approval. Instead, the ICC would make a recommendation concerning placement in security detention to the warden or the warden's designee, who would make the final decision. (*Id.* ¶ 6.)

Once an inmate is placed in security detention, the policies in effect at the times relevant to this action required an initial evaluation by the ICC every seven days for the first thirty days, and thereafter every thirty days. Each evaluation required the ICC to meet to determine if the inmate should remain in security detention; SCDC policy did not require inmates to attend those meetings. (*Id.* ¶ 9.) The required evaluation reviews regarding Plaintiff's continued detention did

occur; ICC members aver that Plaintiff showed no remorse in relation to his attempted escape. (Defs' Mot. for Summ. J. Exs. 2 ¶ 6, 7 ¶ 6, 9 ¶ 7 (Affidavits of ICC members).)

On February 4, 2013, Plaintiff requested documentation showing that State Classification had approved his initial placement in security detention. He was informed that, at the time of his placement, State Classification was no longer required to approve placement in security detention and that the warden or warden's designee approved the recommendation from ICC that he be placed in security detention. (Matthews Aff. ¶ 5 & Response to Inmate Correspondence.)

On June 10, 2014, Plaintiff filed this § 1983 action, alleging that his placement in security detention violated his constitutional rights. On February 10, 2015, the ICC recommended that Plaintiff be approved for release from Security Detention to the general population; Plaintiff was informed of that decision on February 20. (Defs' Mot. for Summ. J. Ex. 9 ¶ 8 (Affidavit of ICC member).) Hence, when Plaintiff filed this action he was still in security detention.

Defendants moved for summary judgment on May 18, 2015 (Dkt. No. 64); briefing on that motion closed on June 24, 2015 (Dkt. No. 73). On January 6, 2016, the Magistrate Judge issued a Report and Recommendation recommending that Defendants' motion be granted. (Dkt. No. 74.) Plaintiff timely filed objections to that Report and Recommendation on January 22, 2016. (Dkt. No. 76.) In addition to Defendants' motion for summary judgment, two other motions in this case are ripe for disposition: Plaintiff's third motion to amend his complaint (Dkt. No. 58, Apr. 6, 2015), and Plaintiff's motion for an extension of time to complete discovery (Dkt. No. 68, May 29, 2015).[1]

---

[1] Plaintiff's motion for an extension of time to complete discovery (Dkt. No. 68) concerns a set of interrogatories. Because the Court does not know whether those interrogatories remain relevant given this Order, it will leave that motion to the judgment of the Magistrate Judge.

## II. <u>Legal Standard</u>

Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e) D.S.C., this case was assigned to a Magistrate Judge for all pretrial proceedings. Under established local procedure in this judicial district, the Magistrate Judge conducted a careful review of the complaint pursuant to the provisions of 28 U.S.C. § 1915 and in light of the following precedents: *Neitzke v. Williams*, 490 U.S. 319 (1980); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

When a proper objection is made to a particular issue, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). However, "[t]he district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n. 9 (4th Cir.2002), *aff'd*, 540 U.S. 614 (2004). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).

In reviewing these pleadings, the Court is mindful of Plaintiff's *pro se* status. This Court is charged with liberally construing the pleadings of a *pro se* litigant. *See, e.g., De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The requirement of a liberal construction does not mean, however, that the Court can ignore a plaintiff's clear failure to allege facts that set forth a cognizable claim, or that a court must assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). Under 28 U.S.C. § 1915(e)(2)(B), the court shall dismiss a prisoner's action if it determines that the action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

## III. Analysis

### A. Motion for Summary Judgment / Due Process Claims

The motion for summary judgment and the Report and Recommendation deal only with Plaintiff's due process claims. Plaintiff's Eighth Amendment claim is presented in a pending motion to amend the complaint (albeit one filed before Defendants' motion for summary judgment).[2] Although the Court agrees with the disposition of Plaintiff's due process claims recommended in the Report and Recommendation, the Court cannot accept its reasoning.

The Report and Recommendation explains that a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." (R. & R. 6–7.) Here, Plaintiff knew he was placed in security detention in

---

[2] The Report and Recommendation notes that if the Court grants summary judgment for Defendants, "all other pending motions will be moot." (R. & R. n.4.) That is true: filing an amended complaint after entry of judgment is not allowed unless the judgment is first set aside under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). However, that also strongly suggests that a motion to amend the complaint should be adjudicated before a later-filed motion for summary judgment.

2004, at which time "Plaintiff possessed sufficient facts about the alleged harm that a reasonable inquiry would have revealed his cause of action. Once a party is placed on inquiry notice, the limitations period is triggered so long as a reasonable person in the plaintiff's position would have learned of the injury in the exercise of due diligence." (*Id.* at 7.) His claims, according to the Report and Recommendation, are therefore time-barred.

Plaintiff argues that the periodic ICC reviews created a continuing violation of his rights, delaying the accrual of his claim. On that point, the Report and Recommendation concludes that "decisions to leave Plaintiff in the same security detention level assignment after each periodic review may amount to continuing ill effects of the alleged unlawful decision to first place Plaintiff in security detention, they are not continuing unlawful acts and, thus, the continuing violation doctrine is not applicable here." (*Id.* 8–9.) That reasoning is incorrect, though it is the continuing detention itself, and not the monthly reviews of that detention, that would constitute a continuing violation.

The continuing violation rule is a "key exception[] to the general rule that torts accrue when the wrong is committed." 51 Am. Jur. 2d Limitation of Actions § 147. The rule provides that where a tort "involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious acts or omissions cease." 4 Modern Tort Law: Liability and Litigation § 35:19 (2d ed.) (explaining the doctrine in the context of nuisance); *accord* 51 Am. Jur. 2d Limitation of Actions § 147. (explaining the doctrine generally). The continuing violation rule is also "a general principle of federal common law" that applies in § 1983 cases. *Heard v. Sheahan*, 253 F.3d 316, 318–19 (7th Cir. 2001); *see also Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (Where inmate alleged that "prison officials repeatedly and regularly imposed lockdown for improper purposes, . . . [t]he statute of

limitations began running form the last date of lockdown."); *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980) ("[T]he allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.").

In *Abdullah v. Reynolds*, this Court held:

> Here, Plaintiff's allegations that he was held in SMU in violation of his constitutional rights constitute a continuing wrong . . . . Therefore, the statute of limitations did not begin to run until he was released from SMU . . . . Therefore, the Court finds that Plaintiff's claim is not barred by the statute of limitations.

No. 2:12-cv-3499-RMG, 2014 WL 851859, at *4 (D.S.C. Mar. 4, 2014). Nothing in the Report and Recommendation persuades the Court that its prior holding on this very question less than two years ago was in error. To the contrary, this Court's holding in *Abdullah* accords with the Supreme Court's decision in *Wallace v. Kato*, which held that where the § 1983 claim at issue was analogous to a false imprisonment claim, the statute of limitations did not begin to run until the alleged false imprisonment ended, even though suit could have been filed at the time of the initial arrest. 549 U.S. 387, 389 (2007). As the Report and Recommendation rests entirely on the reasoning that Plaintiff's claim is time-barred, the Court must reject it.

The Court also observes that although the Report and Recommendation represents Defendants' position as "Defendants argue that all of Plaintiff's claims are barred by the applicable statute of limitations" (R. & R. 2.), in fact the Defendants do not argue that Plaintiff's claims are entirely time-barred. Rather, Defendants argue that "any claims concerning [Plaintiff's] continued placement in Security Dentition prior to June 10, 2011, [should be] be dismissed as barred by the statute [of] limitations." (Dkt. No. 64-1, May 18, 2015.) June 10, 2011 is the date three years before Plaintiff filed this action.

The problem fatal to Plaintiff's due process claim is not its timeliness, but rather its lack of merit. Plaintiff claims that State Classification approval was required for his initial placement in

security detention. Defendants claim that requirement was eliminated shortly before his initial placement. But even if the court were to assume Plaintiff's position, *arguendo*, Plaintiff's claim would still have no merit. An 18-month placement in security detention was required following Plaintiff's escape attempt. (Matthews Aff. ¶ 8.) Thus, even if State Classification approval were required yet absent, that absence would be harmless error resulting in no injury to Plaintiff: State Classification would have been required to place Plaintiff in security detention after Plaintiff took an officer hostage at knifepoint in an escape attempt. Moreover, Plaintiff brings no credible allegation that SCDC officials failed to provide proper periodic review of Plaintiff's placement following that mandatory initial placement, while Defendants provide several affidavits by ICC members averring that proper review did occur. And Plaintiff's suggestion that he was not put on notice of the reasons for his placement in security detention because State Classification did not approve the initial placement decision is not credible on the undisputed facts of this case. An inmate placed in security detention immediately following a violent escape attempt surely knows why he has been placed in security detention. Additionally, Plaintiff admits that the ICC explained to him why he was being held in security detention. (Am. Compl. 5, Dkt. No. 47, Mar. 10, 2015.) Thus, Plaintiff fails to make a prima facie showing that any aspect of his placement in security detention gives rise to any due process violation.

### B.  Motion to Amend the Complaint / Eighth Amendment Claims

Plaintiff previously twice moved to amend the complaint; the Magistrate Judge granted both motions on March 10, 2015. Plaintiff filed yet another motion to amend the complaint—the motion *sub judice*—less than one month later, on April 6 (but before Defendants moved for summary judgment). (Dkt. No. 58.)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend a pleading should be given freely when justice so requires. "The law is well-settled that leave to

amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999) (internal quotation marks omitted). Defendants argue that Plaintiff's motion is futile because the proposed new complaint contains no new allegations. (Resp. in Opp'n to Mot. to Am. Compl., Dkt. No. 60, Apr. 9, 2015.)

Defendants' argument is incorrect. In his proposed new amended complaint, Plaintiff alleges an Eighth Amendment violation arising from the conditions in which he is held in security detention. (Mot. to Am. Compl. 8 (Proposed Am. Compl. ¶ 17).) He specifically alleges that he was been allowed outdoor recreation 26 times in a 123-month period (*i.e.*, less than once every twenty weeks, on average). (*Id.*) Construing a *pro se* pleading liberally, the Court takes the reference to "outdoor recreation" to mean "outdoor exercise," and Plaintiff's assertion that he was held in his cell "24 hours a day" to mean that he was denied out-of-cell exercise. Plaintiff alleges that he has been denied exercise as retaliation for his 2004 escape attempt, and that he has suffered significant physical and emotional harm as a result. Plaintiff's previous complaint did not bring an Eighth Amendment claim (though it did present the alleged lack of exercise as an infringement of a liberty interest in support of a due process claim).

Moreover, Plaintiff's new Eighth Amendment claim is not, on its face, futile. To state an Eighth Amendment claim for unconstitutional conditions of confinement, a two prong test must be met: the Plaintiff must be able to show that (1) there was a serious deprivation of a basic human need, and (2) that prison officials were deliberately indifferent to the prison condition. *See Wilson v. Seiter*, 501 U.S. 294, 300 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Shakka v. Smith*, 71 F.3d 162, 165 (4th Cir.1995).

-9-

Under the first prong, the Plaintiff must establish that the prison condition was a "sufficiently serious" deprivation of a basic human need. *Farmer v. Brennan*, 511 U.S. 825, 825 (1994). Lack of exercise is the deprivation of an identifiable human need. *Wilson*, 501 U.S at 304, 305. Thus, "'[i]t is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees.'" *Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983)). The Fourth Circuit has adopted a "totality of the circumstances test," for reviewing Eighth Amendment claims. Id. at 191. "[W]e have never held that denial of out-of-cell exercise opportunities is per se unconstitutional cruel and unusual punishment. However . . . generally a prisoner should be permitted some regular out-of-cell exercise. . . . in certain circumstances, restricting inmates' opportunities for physical exercise constitutes cruel and unusual punishment." *Id.* at 191–92.

The second prong involves a subjective analysis requiring the Plaintiff to establish that a Defendant had a "sufficiently culpable" state of mind. *Strickler*, 989 F.2d at 1381. The Supreme Court has defined this state of mind requirement to mean deliberate indifference. *Wilson*, 501 U.S. at 303–304. In essence, a Defendant must know of facts from which an inference can be drawn that "a substantial risk of serious harm" is posed to an inmate's health or safety, must actually draw that inference, and then disregard the risk posed to the inmate. *Farmer*, 511 U.S. at 837. Plaintiff alleges deliberate mistreatment in retaliation for his 2004 escape attempt. (Am. Compl. 6 (alleging "a clandestine vendetta against plaintiff for the [unclear] hostage taking of one of their colleagues").)

Additionally, in order to sustain a § 1983 claim for lack of prison exercise in this Circuit, a plaintiff must produce evidence that he has sustained "a serious or significant physical or

emotional injury as a result." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993). Plaintiff's proposed amended complaint, construed liberally, does allege significant resulting physical or emotional injury.

Here, the record should be expanded to allow the totality of the circumstances determination required by *Mitchell v. Rice*. 954 F.2d at 190 ("we remanded the exercise issue 'for development of additional facts ..., particularly whether the plaintiff offered any proof of injury, with an opportunity to both parties to present any additional evidence they may desire.'"); *see also Collins v. McCall*, No. 2:13-CV-02700-RMG, 2014 WL 6809792, at *11 (D.S.C. Dec. 3, 2014) (Report and Recommendation adopted by the Court). To be sure, a prisoner bringing an Eighth Amendment claim must clear a very high bar. *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim." (internal reference omitted)). But the restriction alleged here may be sufficiently severe. *Cf. Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000) (denial of all access to outdoor exercise for six-and-one-half weeks violated the Eighth Amendment); *Allen v. Sakai*, 48 F.3d 1082, 1087–88 (9th Cir. 1994) (allowing only 45 minutes of outdoor exercise in a six-week period violated the Eighth Amendment); *Anderson v. Colorado*, 887 F. Supp. 2d 1133, 1139 (D. Colo. 2012) (holding that "denial of any opportunity to be outdoors and to engage in some form of outdoor exercise for a period of 12 years is a serious deprivation of a human need").

Finally, the Court distinguishes Plaintiff's due process and Eighth Amendment claims. If a person is unlawfully placed in security detention and harmed by the conditions of that detention, then he might have a claim even if the conditions of that detention do not violate the Eighth

-11-

Amendment. Prison conditions are unpleasant, maximum or special security detentions within prison even more so, but that does not mean that those conditions violate the Eighth Amendment. *See Shakka* 71 F.3d at 166. On the other hand, if a prisoner is lawfully placed in security detention, he may nonetheless have a claim for a constitutional violation if the security detention is unlawfully "cruel and unusual." U.S. Const. Amend. XIII. In its analysis of the motion for summary judgment, the Court holds that Plaintiff's claim that prison officials violated his due process rights by placing him in security detention is without merit. But that analysis does not speaks to Plaintiff's Eighth Amendment right to be free from "cruel or unusual punishment" while in security detention. *Id.* The record is insufficient for the Court to evaluate that claim at this time.

The Court therefore will grant Plaintiff's motion to amend the complaint and recommit the matter to for further proceedings regarding the lawfulness of the conditions in which Plaintiff was held in security detention.

## IV. Conclusion

For the foregoing reasons, Plaintiff's third Motion to Amend the Complaint (Dkt. No. 58) is **GRANTED**, Defendants' Motion for Summary Judgment (Dkt. No. 64) is **GRANTED IN PART AND DENIED IN PART**, and the Court **RECOMMITS** this matter to the Magistrate Judge for consideration of Plaintiff's claim, pursuant to 42 U.S.C. § 1983, that his Eighth Amendment rights were violated.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

January 25, 2016
Charleston, South Carolina